NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

———————————————————
                                 :

**MARK IV TRANSPORTATION &**
**LOGISTICS, INC.,**                  :

                                 :
                   **Plaintiff,**       :
    **v.**                           :      **CIVIL ACTION NO.  09-6480 (ES)**
                                 :

**LIGHTNING LOGISTICS, LLC,**    :      **OPINION**
**TRAVELLER LOGISTICS, INC., JOHN**  :
**GREGORY O'RIORDAN, CROSSTOWN**  :
**COURIER, INC., and SCOTT EVATT,**  :
                                 :
                  **Defendants.**    :
——————————————————— :

**SALAS, District Judge.**

Pending before this Court is Defendants Crosstown Courier, Inc. ("Crosstown"), and Scott Evatt's ("Evatt," and collectively with Crosstown, "Defendants") joint Motion to Dismiss Plaintiff Mark IV Transportation & Logistics, Inc.'s ("Mark IV") First Amended Complaint (Docket Entry No. 10 ("Am. Compl.")) pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted and Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.  The Court has considered the briefs[1] submitted in support of and in opposition to the present motion, and decided the matter without oral argument pursuant to Fed. R. Civ. P. 78(b).  For the reasons set forth below, Defendants' Motion to Dismiss is granted.

---

[1]  The Court received a letter dated July 31, 2012, from Plaintiff with substantive facts and arguments related to the pending motion.  (Docket Entry No. 73).  Defendant responded to Plaintiff's letter on the same date.  (Docket Entry No. 74).  The Court declines to consider the arguments contained in either letter.  The parties completed the briefing on the pending motion on March 7, 2012.  Plaintiff did not seek permission to supplement the record or file a sur-reply.  L. Civil R. 7.1(d)(6).

## I.   BACKGROUND

On December 23, 2009, Plaintiff commenced this action against Lightning Logistics, LLC ("Lightning") alleging claims for (1) book account and (2) breach of contract.  (Docket Entry No. 1).  On December 1, 2010, the Court granted Plaintiff leave to file an amended complaint to add Traveller Logistics, Inc. ("Traveller"), John Gregory O'Riordan ("O'Riordan"), Crosstown and Evatt as defendants.  (Docket Entry No. 10, Am. Compl.).   The causes of action remain the same.  (*Id.*).  Plaintiff filed its amended complaint on February 2, 2011.  (Docket Entry No. 10).

Plaintiff is a New Jersey corporation with offices in Rochelle Park, New Jersey, that provides delivery services.  (Am. Compl. ¶¶ 1, 11).  Lightning was a Tennessee limited liability corporation with its principal offices located in Nashville that provided logistical services to commercial shippers.  (*Id.* ¶ 2; Docket Entry No. 55-1, Declaration of Eli J. Rogers ("Rogers Dec."), Exhibit 5 ¶ 4).  In April 2010, Plaintiff alleges that Lightning dissolved to "avoid its debts and liabilities and was restructured as Traveller Logistics, Inc. and/or Crosstown Carrier, Inc."  (Am. Compl. ¶ 3).  Evatt resides in Nashville, Tennessee and was the former Chief Executive Officer and owner of Lightning.  (*Id.* ¶ 7).  Crosstown is a Tennessee corporation with its principal offices located in Nashville, Tennessee.  (*Id.* ¶ 6).  Evatt is also the owner and Chief Executive Officer of Crosstown.  (*Id.* ¶ 7).

Plaintiff alleges that it entered into a business relationship with Lightning to provide delivery services.  (*Id.* ¶ 11).  Plaintiff further alleges that Lightning owes Plaintiff approximately $100,758.67 for services rendered.  (*Id.* ¶¶ 13, 14).  Plaintiff contends that, as owner of Lightning, Evatt personally guaranteed Lightning's debts.  (*Id.* ¶ 16).   Plaintiff also

contends that Evatt used Lightning as an alter ego and then restructured and dissolved Lightning to avoid paying its debts.  (*Id.* ¶¶ 17, 18).

## II.    LEGAL STANDARD

When a defendant attacks the court's jurisdiction, the plaintiff shoulders the burden of demonstrating that jurisdiction is proper.  *Mellon Bank (East) PSFS, Nat'l. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).  "The plaintiff meets this burden and presents a *prima facie* case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state."  *Id.* (citation and internal quotation marks omitted).  Plaintiff must sustain its burden by establishing facts through sworn affidavits or other evidence; reliance on the bare pleadings is not enough.  *Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir. 1990).  If the plaintiff meets its burden, the burden shifts to the defendant, who must make a compelling case that the exercise of jurisdiction would be unreasonable.  *Mellon Bank*, 960 F.2d at 1226 (internal citations omitted).

Under Federal Rule of Civil Procedure 4(k), personal jurisdiction over non-resident defendants may only be exercised to the extent that it is authorized by the laws of the state in which the federal court sits.  *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007).  New Jersey's long-arm statute permits jurisdiction over a non-resident defendant to the extent that is permitted by the Constitution.  *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 145 (3d Cir. 1992).  Accordingly, a court may exercise personal jurisdiction over a non-resident defendant if the defendant has "certain minimum contacts with . . . [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *O'Connor*, 496 F.3d at 316 (internal quotations omitted).  In determining whether sufficient

minimum contacts exist, the court looks at "the relationship among the defendant, the forum, and the litigation." *Pinker v. Rosche Hold.*, 292 F.3d 361, 368 (3d Cir. 2002).

Personal jurisdiction can be established by way of specific jurisdiction or general jurisdiction. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414–15 & nn.8 & 9 (1984). A court may exercise general jurisdiction when a defendant has "continuous and systematic contacts" with the forum state. *Id.* at 415, n. 9. The plaintiff must show "significantly" more than mere minimum contacts with the forum state. *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). Moreover, the facts required to establish general jurisdiction must be extensive and persuasive. *See Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir. 1982) (internal citations and quotation marks omitted).

On the other hand, in *O'Connor*, the Third Circuit set forth the following framework to determine if specific jurisdiction is present: (1) whether the defendant purposefully directed its activities at the forum; (2) whether the litigation arises out of or relates to at least one of the contacts; and (3) whether the exercise of jurisdiction otherwise comports with traditional notions of fair play and substantial justice. 496 F.3d at 317 (internal citations and quotation marks omitted). To establish specific jurisdiction, a plaintiff need not show that the defendant(s) be physically located in the state while committing the alleged act(s). *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Nor is jurisdiction defeated merely because the bulk of the harm occurred outside the forum. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984). Instead, a single act may satisfy minimum contacts if it creates a substantial connection with the forum. *See Burger King Corp.*, 471 U.S. at 476 n.18.

Regardless of whether a court exercises specific or general jurisdiction, it must be established that the defendant "has purposefully directed its activities toward the residents of the forum state, . . . or otherwise 'purposefully avail[ed] itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws.'" *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir.1998) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 7 (1958)).

## III.   ANALYSIS

In support of their motion to dismiss for lack of personal jurisdiction, Defendants argue that the Court cannot maintain either general or specific jurisdiction over either Defendant. (D.E. No. 55-6, Brief in Support of Renewed Motion ("Def. Moving Br.") 22).   As to general jurisdiction, Defendants argue that they do not maintain a continuous or systematic presence in New Jersey because they do not own or rent property, maintain a place of business or possess employees or agents in New Jersey.  (*Id.*).   As to specific jurisdiction, Defendants contend that the claims alleged by Plaintiff arise out of activities in Tennessee, not in New Jersey.  (*Id.*).

In opposition, Plaintiff argues that this Court may maintain general jurisdiction over Crosstown because it transacts business in New Jersey.  In support, Plaintiff cites to Crosstown's website which indicates that it offers "deliveries to any city in any of the 48 contiguous United States and Canada."   (D.E. No. 58, Memorandum of Law of Plaintiff in Opposition to Defendants' Renewed Motion to Dismiss ("Pl. Opp.") 18; D.E. No. 59-3, Decl. of Paul Piantino ("Piantino Decl.,") Ex. 3).   Plaintiff also contends that Crosstown is subject to specific jurisdiction because it is a successor to the interests of Lightning.  (Pl. Opp. 19).  As to Evatt, Plaintiff argues that specific jurisdiction is appropriate because (1) Evatt entered into a contract with Plaintiff and (2) Evatt enjoyed the financial benefit of Plaintiff's work.  (*Id.*).

5

A.      **Crosstown**

i.     **General Jurisdiction**

It appears that Plaintiff attempts to argue that Crosstown has systematic and continuous contacts with New Jersey based on the representation on its website that Crosstown will deliver here.  (Pl. Opp. 18).  Plaintiff, however, has not met its burden to set forth any facts to support this contention.   Plaintiff has not informed the Court how much of Crosstown's business occurs in New Jersey or whether Crosstown targets its business towards New Jersey.  In contrast, Evatt has attested that Crosstown (1) does not own or lease any property in New Jersey; (2) does not maintain an office or place of business in New Jersey; (3) does not have employees or agents in New Jersey; (4) is not licensed to conduct business in New Jersey; and (5) does not conduct marketing or advertising in New Jersey.  (Rogers Dec., Exhibit 5 ¶ 31).  As such, the Court declines to exercise general jurisdiction over Crosstown.

Moreover, the information on Crosstown's website does not permit this Court to exercise jurisdiction over it.  Plaintiff rests its entire argument on the statement that it offers "deliveries to any city in any of the 48 contiguous United States and Canada" on Crosstown's website and the invitation for browsers to call a toll free number.  (Piantino Decl., Ex. 3).  The cases that have considered the relationship between the internet and personal jurisdiction "reveal[ ] that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).

*Zippo* "has become a seminal authority regarding personal jurisdiction based upon the operation of an Internet web site." *Toys "R" Us v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir.

2003). *Zippo* sets forth three categories of cases a court may face in considering the impact a party's website may have upon the personal jurisdiction analysis.

In the first category of cases, a defendant will actively do business on the internet. *Zippo*, 952 F. Supp. at 1124 (citations omitted). In this category, a defendant "enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet." *Id.* Crosstown does not fall into this category as Plaintiff has not demonstrated any business that Crosstown performs on the internet. Therefore, the Court will not exercise general jurisdiction over Crosstown based on the first category.

In the second category, "a user can exchange information with the host computer." *Id.* Here, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the website." *Id.* Plaintiff has not set forth any evidence that a user may exchange information with Crosstown through its website. Plaintiff relies solely on a printout from Crosstown's website which describes Crosstown's delivery services and invites a user to call a toll free number. (Piantino Decl., Ex. 3). The printout does not demonstrate that users may exchange information with Crosstown through its website. Therefore, the Court declines to exercise general jurisdiction based on the second category.

Finally, in the last category, courts have found that general jurisdiction does not exist where "a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions." *Id.* This type of website merely makes "information available to those who are interested." *Megaparts v. Highcom Sec., Inc.*, No. 09-4052, 2010 WL 2652499, at *3 (D.N.J. June 25, 2010) (internal citations & quotations omitted). It appears that Crosstown's website falls within this third category. The text of the website announces Crosstown's services

and invites customers to call a toll free number.  (Piantino Decl., Ex. 3).  Other courts in this jurisdiction have found that websites similar to Crosstown's, which advertise a company's goods or services and permit users to contact the company to purchase those goods or services do not confer jurisdiction.  *Se, e.g. Green v. William Mason & Co.*, 996 F.Supp. 394, 399 (D.N.J. 1998) (advertising using a website does not confer jurisdiction over an out of state defendant).  In fact, in *Megaparts*, the Court declined to exercise general jurisdiction over a defendant that listed four New Jersey based customers on its website finding that the "allegation that the [defendant] services New Jersey customers is not sufficient . . . ."  2010 WL 2652499, at *3-4.   Here, Crosstown merely advertises that it will deliver to the "48 contiguous United States" and does not specifically name New Jersey as a jurisdiction it targets nor any customers based in New Jersey.  Crosstown's website is even more tenuously related to New Jersey than the defendant in *Megaparts*.   Based on the framework laid out by *Zippo* and adopted in *Toys "R" Us*, Crosstown's passive informational website would not be sufficient to support the exercise of general jurisdiction over Crosstown.  As such, the Court declines to exercise general jurisdiction over Crosstown based solely on Crosstown's website.

      **ii.**    **Specific Jurisdiction**

As to specific jurisdiction, Plaintiff alleges that Crosstown is a successor to the interests of Lightning and is thus liable to Plaintiff.  (Pl. Opp. 19).  Plaintiff argues that: 1) Evatt was a high level officer at both Crosstown and Lightning; 2) Crosstown and Lightning shared office space; and 3) Crosstown and Lightning used the same computer servers.  (*Id*. at 4-5).   As support, Plaintiff refers the Court to a Release and Transfer Agreement between Lightning, Crosstown, Evatt and others.  (Piantino Dec., Exhibit 4).   In response, Defendants state that Crosstown was not a party to the contract between Plaintiff and Lightning.  (Rogers Dec.,

Exhibit 5 ¶ 14, Exhibit 9 ¶ 11).  Moreover, Crosstown's formation and Evatt's involvement with Crosstown both precede the date Plaintiff entered into the alleged contract with Lightning. (Rogers Dec., Exhibit 5 ¶¶ 25, 26).  In fact, Lightning was formed after Crosstown.  (Rogers Dec. ¶¶ 18, 19).  Defendants also claim that, while Crosstown performs "last-mile" deliveries, Lightning was only a logistics corporation that managed deliveries.  (*Id*. Exhibit 5, ¶ 4).  Evatt has also attested that, during his affiliation with Lightning, it kept its corporate form.  (*Id.* ¶ 8).

Traditionally, New Jersey law provides that "where one company sells or otherwise transfers all its assets to another company the latter is not liable for the debts and liabilities of the transferor." *Ramirez v. Amsted Indus., Inc.,* 86 N.J. 332, 340, (1981) (citations omitted); *Portfolio Fin. Servicing Co. v. Sharemax.com, Inc.,* 334 F. Supp. 2d 620, 624–25 (D.N.J. 2004). There are four recognized exceptions to the prohibition of successor liability: "where (1) the purchasing corporation expressly or impliedly agreed to assume such debts and liabilities; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is entered into fraudulently in order to escape responsibility for such debts and liabilities." *Ramirez,* 86 N.J. at 340–41.  Here, there is no evidence that Lightning actually sold or transferred its assets to Crosstown.  In fact, Evatt has attested that (1) Crosstown never agreed to assume Lightning's debts or contractual obligations; (2) Crosstown did not acquire Lightning; and (3) Crosstown did not purchase Lightning's accounts or book of business.  (Rogers Dec., Exhibit 5 ¶¶ 32, 33).  As such, the Court will not impose successor liability on Crosstown.  *Ramirez,* 86 N.J. at 340. Without the imposition of successor liability, the Court has no grounds by which to exercise personal jurisdiction over Crosstown as Crosstown is not a party to the alleged agreement at issue.

The Court notes that Plaintiff attempts to demonstrate in its opposition to Defendants' motion to dismiss that Crosstown was an alter ego or successor of Lightning by alleging the typical hallmarks of an alter ego corporation: a commingling of funds (Pl. Opp. 10) and shared officers, office space and computer servers (*id.* at 5).   Notably, however, Plaintiff never pleads in its Amended Complaint that Crosstown is an alter ego of Lightning.   Plaintiff pleads that Evatt used Lightning as his alter ego (Am. Compl. ¶ 17) and that Crosstown is a successor in interest to Lightning (*id.* ¶¶ 25, 26).   As such, the Court declines to consider the alter ego argument as it relates to Crosstown because it has no support in Plaintiff's Amended Complaint.[2]

**B.      Evatt**

Plaintiff contends that this Court may maintain specific jurisdiction over Evatt because (1) Evatt entered into a contract with Plaintiff and (2) Evatt enjoyed the financial benefit of Plaintiff's work.   (Pl. Opp. 19).   As Defendants point out, Evatt entered into the contract on behalf of Lightning in his corporate capacity.   (Rogers Dec., Exhibit 5 ¶ 11).   Evatt did not travel to New Jersey to negotiate or sign the contract.   (*Id.* ¶ 12).   Plaintiffs have not provided any evidence that Evatt personally guaranteed Lightning's obligation or that he was a party to the contract in his individual capacity.

As a general rule, "[i]ndividuals performing acts in a state in their corporate capacity are not subject to the personal jurisdiction of the courts of that state for those acts."   *Bowers v. NETI Techs, Inc.*, 690 F. Supp. 349, 357 (E.D. Pa. 1988).   The Court will waive this rule when (1) a corporate agent commits a tort in his corporate capacity or (2) the officer is charged with

---

[2] Plaintiff attempts to cure these deficiencies in his Opposition Brief by arguing that Evatt "treated [Lightning] as [his] own personal 'piggy bank' by siphoning corporate funds, selectively paying corporate debts with personal funds and using Lightning's corporate form as a façade to the detriment of Lightning's creditors while still managing to draw [a] salar[y]."   (Pl. Opp. 13). Plaintiff's attempt to supplement his Complaint, or cure the deficiencies contained therein, by proffering additional allegations in his Opposition Brief, is futile.   *See Commonwealth of Pa ex. Rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (internal quotations omitted).

violating a statutory scheme that provides for personal liability.  *National Precast Crypt Co. v. Dy-Core of Pa, Inc.*, 785 F. Supp. 1186, 1191 (W.D. Pa. 1992).  Plaintiff has not pled a cause of action that falls into either category.  Therefore, the fact that Evatt signed the agreement on behalf of Lightning does not establish personal jurisdiction over Evatt in New Jersey.

Plaintiff also contends that the Court should exercise jurisdiction over Evatt because he enjoyed the financial benefit of Plaintiff's work.  (Pl. Opp. 19).  Plaintiff cites to no case law as to why this fact would permit this Court to exercise personal jurisdiction over Evatt.  The Court will assume, however, that Plaintiff is asserting that personal jurisdiction in New Jersey is proper based on the allegation in the Amended Complaint that Evatt used Lightning as an alter ego.  (Am. Compl. ¶ 17).

The corporate form was created to allow investment without the hazard of personal liability for the acts of the corporation.  *See Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001).  However, under state and federal common law, this limited liability may be disregarded, with shareholders and officers becoming liable, if the corporate form is abused. *Publicker Indus., Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1069 (3d Cir. 1979).

This equitable tool may be used "when the court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime."  *Zubik v. Zubik*, 384 F.2d 267, 272 (3d Cir. 1967).  Veil-piercing may be also be possible if "the parent so dominated the subsidiary that it had no separate existence."  *New Jersey Dep't of Envtl. Prot. v. Ventron Corp.*, 468 A.2d 150, 164 (1983).  In other words, there must be "complete domination, not only of finances but of policy and business practice . . . so that the corporate entity . . . had at the time no separate mind, will or

existence of its own." *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988) (citation and quotation omitted).

Under such a claim, the party attempting to negate the corporate entity bears the burden of proof. *Publicker Indus., Inc.*, 603 F.2d at 1069 (*citing United States v. Standard Beauty Supply Stores, Inc.*, 561 F.2d 774 (9th Cir. 1977)). Under New Jersey law, to state a claim for piercing the corporate veil, the "plaintiff must show that: (1) one corporation is organized and operated as to make it a mere instrumentality of another corporation, and (2) the dominant corporation is using the subservient corporation to perpetrate fraud, to accomplish injustice, or to circumvent the law." *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 171 (3d Cir. 2002). The factors that will be considered in determining if a party disregarded the corporate form are:

> [G]ross undercapitalization . . . "failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders."

*Craig*, 843 F.2d at 150 (quoting *Am. Bell Inc. v. Fed'n of Tel. Workers*, 736 F.2d 879, 886 (3d Cir. 1984)).

In support of the alter ego allegations, Plaintiff contends that Evatt (1) used Lightning as his "piggy bank" by siphoning corporate funds (2) selectively paid corporate debts with personal funds and (3) used Lightning's corporate form as a façade. (Pl. Opp. 13). In support of these conclusions, Plaintiff claims that Evatt personally guaranteed Lightning's line of credit with Tennessee Commerce Bank. (Pl. Opp. Br. 5). Plaintiff also points this Court to a Release and Transfer Agreement between Evatt, Lightning, Crosstown and others. (Piantino Dec., Exhibit 4). The Release and Transfer Agreement set forth the terms of Evatt's transfer of his ownership

12

interest in Lightning.   (*Id.*).   Plaintiff contends that the mutual release between Evatt and Lightning and Evatt's agreement to pay a portion of the monies due on Lightning's line of credit is sufficient evidence to permit this Court to pierce the corporate veil.   (Pl. Opp. 6).   Plaintiff argues that the Evatt's personal guarantee caused him to commingle his and Lightning's funds because Lightning paid its debts from the line of credit that Evatt guaranteed.   Therefore, Plaintiff contends that it was as if Evatt himself was personally paying Lightning's debts.   (*Id.* 14).   Evatt attests that, during his affiliation with Lightning, it maintained its corporate form. (Rogers Dec., Exhibit 5 ¶ 8).

None of Plaintiff's allegations rise to the level that would permit this Court to pierce the corporate veil and find that Evatt and Lightning were alter egos.   Despite Plaintiff's best efforts, Plaintiff has not demonstrated that Evatt so dominated Lightning that it had no separate existence.   Plaintiff only attempts to allege that Evatt commingled funds and does not make allegations as to any of the other factors the Court must consider, such as a failure to observe corporate formalities, absence of corporate records or insolvency.   *Craig*, 843 F.2d at 150 (citing *Am. Bell, Inc.,* 736 F.2d at 886).   Moreover, Plaintiff's attempt to demonstrate that Evatt commingled funds with Lightning also fails.   Evatt's guarantee of Lightning's line of credit with Tennessee Commerce Bank does not demonstrate a commingling of Evatt and Lightning's assets.   Even if the Court were to consider that this was a commingling of funds, which it does not, Plaintiff has only alerted the Court to this isolated instance.   One allegation of commingled funds is not enough evidence for the Court to entertain the drastic remedy of piercing the corporate veil.   *See U.S. v. Pisani*, 646 F.2d 83, 89 (3d Cir. 1981) (piercing the corporate veil where the defendant "followed no corporate formalities, operated the corporation with his personal funds, loaned large sums to the corporation and then repaid the loans to himself with

corporate funds while the corporation was failing, and kept the corporation undercapitalized by loaning it money instead of investing equity in it").  Without more substantial allegations, the Court declines to exercise personal jurisdiction over Evatt.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for lack of personal jurisdiction is granted. [3]


**Dated:**  September 28, 2012                                    */s/ Esther Salas*_____
                                                                          **Esther Salas, U.S.D.J.**

---

[3]   Because the Court dismisses Plaintiff's Second Amended Complaint as to Crosstown and Evatt for lack of personal jurisdiction, it declines to address Defendants' alternative arguments.  *See Ashmore v. Ashmore*, No. 11-5708, 2011 U.S. Dist. LEXIS 130902, at *39 (D.N.J. Nov. 10, 2011).