UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____   :
                                    :
MARK IV TRANSPORTATION &            :
LOGISTICS, INC.,                    :
                                    :         Civil Action No. 09-6480 (ES)
            Plaintiff,              :
                                    :
      v.                            :         REPORT AND RECOMMENDATION
                                    :
LIGHTNING LOGISTICS, LLC, et al.,   :
                                    :
            Defendants.             :
_____   :


## I.        Introduction

This matter comes before the Court on the motion of Defendants, Crosstown Courier, Inc. ("Crosstown"), and Scott Evatt, to dismiss the Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) or, in the alternative, for summary judgment pursuant to Rule 56.  D.E. 130.  The Honorable Esther Salas referred this motion to the Undersigned for a Report and Recommendation.  Pursuant to Fed. R. Civ. P. 78(b), the Court decided the motion without oral argument.  For the reasons set forth below, the Undersigned respectfully recommends that the District Court grant Defendants' motion to dismiss for lack of personal jurisdiction, and deny as moot the motions to dismiss under Rule 12(b)(6) and for summary judgment.

## II.       Background and Procedural History

Much of the relevant factual background is already set forth in the District Court's September 28, 2012 Opinion.  See Opinion, D.E. 76. Plaintiff is a New Jersey corporation with its principal place of business in Kearny, New Jersey. Second Amended Compl. D.E. 121 ¶ 2.

1

Lightning Logistics, LLC ("Lightning") was a Tennessee limited liability corporation with its principal office located in Nashville, Tennessee.[1]  Id. ¶ 3.  Lightning provided logistical services to commercial shippers, including arranging for the delivery of packages by companies that performed "last mile" deliveries such as Mark IV.  Id.  Evatt resides in Tennessee and is the former Chief Executive Officer and owner of Lightning.  Id. ¶¶ 7, 12.  Crosstown is a Tennessee corporation with its principal office located in Nashville, Tennessee.  Id. ¶ 5.  Evatt is also a partial owner of Crosstown and its Chief Executive Officer.  Id. ¶ 17.

On December 23, 2009, Plaintiff commenced this action against Lightning alleging claims for (1) collection of the amount due under a book account and (2) breach of contract. Compl. D.E. 1.  Plaintiff alleges that MailExpress, a Georgia company, engaged Lightning to arrange for delivery services around the country. Plaintiff further alleges that from July 6, 2008 to August 25, 2009, Lightning in turn contracted with Plaintiff to perform those deliveries in New Jersey.  Second Amended Compl., D.E. 121 ¶¶ 33-35.  Plaintiff asserts that, although MailExpress paid Lightning in full for the work done in connection with this contract, Lightning failed to fully pay Plaintiff.  Id. ¶¶ 36-37. Plaintiff claims that Lightning owes Plaintiff approximately $100,758.67 for the delivery services rendered.  Id.  Plaintiff contends that Lighting was grossly undercapitalized, and therefore could not cover all of its operating expenses.  Id. ¶ 67.

On December 1, 2010, the Court granted Plaintiff leave to file an amended complaint to add Traveller, John Gregory O'Riordan, Crosstown and Evatt as defendants.  D.E. 9.  The causes

---

[1]     The Second Amended Complaint alleges that Lightning dissolved in or around March 2010, shortly after it was served with Mark IV's Complaint, renamed itself Traveller Logistics ("Traveller"), and has since continued Lightning's operations.  Second Amended Complaint, D.E. 121 ¶¶ 39-41.  Plaintiff amended its complaint to add Traveller as a defendant under a theory of successor liability.  Id. ¶ 43.

of action remained the same. Id.  Plaintiff filed the Amended Complaint on February 2, 2011.

D.E. 10.  On February 15, 2012, Defendants moved to dismiss the Amended Complaint pursuant

to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and Fed. R. Civ. P. 12(b)(6) for

failure to state a claim upon which relief can be granted.  D.E. 55.  On November 28, 2012, the

Honorable Esther Salas, U.S.D.J, granted Defendants' motion to dismiss for lack of personal

jurisdiction. Opinion and Order, D.E. 77, 78.

On October 9, 2012, Plaintiff moved for reconsideration of Judge Salas's November 28,

2012 Opinion and Order.  Motion for Reconsideration, D.E. 80.  On October 22, 2013, Judge

Salas vacated her November 28, 2012 Opinion and Order and ordered the Amended Complaint

reinstated as to Defendants Crosstown Courier, Inc. and Scott Evatt and order jurisdictional

discovery.  Order, October 22, 2013, D.E. 120.  Judge Salas permitted Plaintiff to depose Scott

Evatt in his individual capacity and as a representative of Crosstown.  Id.

On October 29, 2014, Plaintiff filed the Second Amended Complaint alleging alter ego

liability and seeking to pierce the corporate veil against Evatt and Crosstown.  Second Amended

Complaint, D.E. 221 ¶¶ 63-89.  On February 20, 2014, Defendants moved to dismiss the Second

Amended Complaint. D.E. 130.

**Defendants' Arguments**

Defendants Crosstown and Evatt argue this Court has neither general personal

jurisdiction nor specific personal jurisdiction over them.  Defendants argue that there is no

general jurisdiction because neither Crosstown Courier nor Evatt maintained continuous and

systematic contacts with New Jersey.  Specifically, Defendants Crosstown Courier and Evatt

argue: (1) Crosstown Courier has never conducted business or operations in New Jersey; (2)

Crosstown Courier has never marketed or advertised in New Jersey, nor had a New Jersey

customer; and (3) Evatt does not own "any entity that maintains a place of business in New Jersey," nor employs New Jersey citizens.  Def. Brief, D.E. 130-1, at 13-14.  Additionally, they argue that Evatt has travelled to New Jersey only a handful of times, all of which were personal trips to visit family and all of which occurred before 1990.  Id. at 14.  In particular, Defendants Crosstown Courier and Evatt argue that Evatt has never travelled to New Jersey in a business capacity and he did not travel to the state to negotiate or sign the contract between Lightning and Mark IV.  Id.

Crosstown and Evatt also argue that the Court lacks specific jurisdiction over them because Plaintiff cannot establish that Defendants ever "purposefully directed [their] activities at the forum,"  (quoting O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007)) neither of them performed any relevant activity in New Jersey, and  none of Plaintiff's claims arise from any activities undertaken by them in New Jersey.  Id. at 14-15.  Therefore, Defendants argue that Plaintiff cannot establish that any contract between them and Plaintiff was either formed, performed, or breached in New Jersey.[2]  Id.

Furthermore, Defendants argue that personal jurisdiction cannot be obtained by piercing Lightning's corporate veil.  Defendants contend that even if Lightning failed to observe corporate formalities or inappropriately made loans or disbursements to members of the LLC, New Jersey law does not hold the constituent members of the LLC liable.  Id. at 16-17 (citing N.J.S.A. 42:2C-30(b), 42:2C-30(a)).  Specifically, Defendants argue New Jersey law recognizes a qualitative distinction between LLCs and corporations, and the protections afforded to each

---

[2]       As to Plaintiff's allegations that Evatt signed the pertinent contact on Lightning's behalf, Crosstown and Evatt argue "this fact cannot amount to personal jurisdiction as the contract was signed in a corporate, and not individual, capacity."  Def. Brief, D.E. 130-1, at 15.

4

structure and these distinctions are fatal to Plaintiff's attempt to pierce Lightning's corporate veil.  Id. at 18.

**Plaintiff's Opposition**

Plaintiff argues in opposition that this Court can exercise jurisdiction over Crossstown and Evatt by piercing the corporate veil of Lightning because Crosstown was essentially an alter ego of Lightning.  Pl.'s Br., D.E. 136, at 16.[3]  Plaintiff argues that limited liability corporations must have a certain level of "respect for and adherence to corporate formalities" and there is enough evidence in this instance to indicate a lack of corporate formalities.  Id. at 8.  In furtherance of Plaintiff's claim that it is appropriate to pierce Lightning's corporate veil, Plaintiff relies on a series of financial transactions from Lightning's corporate funds to Lightning's individual partners, including Evatt, all effectuated without the passing of formal resolutions. Specifically, Plaintiff relies on the following transactions: (1) at the time of formation, Lightning obtained a $100,000 line of credit with Tennessee Commerce Bank for operating capital; (2) Lightning later obtained a second line of credit with Tennessee Commerce Bank for $500,000; (3) in 2007, Evatt received a transfer of $55,000; (4) in 2008, Lightning, through Evatt, issued a loan of $160,000 of Lightning's corporate funds to Crosstown; and (5) Evatt approved a loan of $35,000 to. O'Riordan for purpose of moving his personal residence. See id. at 8-13.

---

[3] Plaintiff does not explain how piercing the corporate veil leads to personal jurisdiction in this case. It appears that Plaintiff is attempting to impute Lightning's contacts with New Jersey, specifically through its negotiation and performance of the contract with Plaintiff to Evatt and Crosstown. Specifically Plaintiff relies on the theory that once the corporate veil of Lightning is pierced, all of Lightning's contacts are imputed to Evatt and Crosstown. See Eldon v. Brown, CV No. 08-5422, 2010 WL 415317 (D.N.J. Jan. 29, 2010) (finding that the Court may confer personal jurisdiction over a parent corporation when the subsidiary had "either directed the parent to take an action or cause an effect in the forum state or the businesses must have disregarded their existence as separate corporate entities.").

Additionally, Plaintiff argues that no minutes were ever taken for any corporate meetings throughout Evatt's three-year presidency at Lightning, and Lightning did not have company bylaws. Id.  Plaintiff relies on these arguments to demonstrate that there was a complete lack of corporate formalities, and because of that, the Court should pierce the corporate veil.  Id. at 8.

Furthermore, Plaintiff asserts that the various withdrawals of funds from Lightning's corporate account to Crosstown or to Evatt are an indication of siphoning of funds. Id. at 15-17. While Defendants argue that the transfer of funds into Evatt's account was payment for his services and the loan has been repaid, Plaintiff argues that there is no evidence of this repayment. Id. at 17 n.4.  Plaintiff claims that this unauthorized withdrawal of funds forced the company into financial disrepair, to "live paycheck to paycheck," and accelerated Lightning's dissolution.  Id. at 18.

**Defendants' Reply**

In their reply, Defendants argue that while Plaintiff relies heavily on evidence that purportedly shows a failure to observe corporate formalities and alleged self-dealing with Lightning's corporate assets, these allegations are legally insufficient under both New Jersey and Tennessee law to pierce an LLC's corporate veil.  Def.'s Reply, D.E. 137, at 3.  Defendants assert that under New Jersey law, LLC officers have the express ability to "engage in financial transactions with the company, including lending and borrowing money, and assuming obligations of the company."  Id. at 6.  Defendants further assert Plaintiff's attempt to characterize Lightning as "grossly undercapitalized" during its operation is not one which is accepted by the law of this Court, instead the law requires that "the adequacy of capital is to be measured as of the time of formation of the corporation."  Id. at 8.

Finally, Defendants argue that this Court cannot exercise personal jurisdiction over Crosstown because there is no evidence that Crosstown was Lightning's alter ego. Id. at 10. Here, Defendants contend that Lightning and Crosstown maintained separate existences and performed completely different services with different clients.  Id.

### III.    Discussion

#### 1)  Personal Jurisdiction

Pursuant to Rule 4(e) of the Federal Rules of Civil Procedure, a federal court may exercise jurisdiction over a non-resident defendant to the extent authorized by state law within that forum.  Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2000); Pennzoil Prod. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 200 (3d Cir. 1998).  New Jersey's long-arm rule extends jurisdiction over non-resident defendants to the full extent permitted by the United States Constitution.  Carteret Sav. Bank, F.A. v. Shushan, 954 F.2d 141, 145 (3d Cir. 1992).  Personal jurisdiction under the Due Process Clause of the Constitution requires proof of a "relationship among the defendant, the forum, and the litigation."  Shaffer v. Heitner, 433 U.S. 186, 204 (1977); IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998).

Once a defendant moves to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the plaintiff has the burden of setting forth competent evidence demonstrating that the moving defendant had sufficient contacts with the forum to justify the Court's assertion of either general or specific personal jurisdiction. See BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp., 229 F.3d 254, 259 (3d Cir. 2000) (citing Stranahan Gear Co. v. NL Indus., Inc., 800 F.2d 53, 58 (3d Cir. 1986)).  The plaintiff bears the burden of demonstrating facts that establish personal jurisdiction and the Court, in considering a Rule 12(b)(2) motion, "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff."  Pinker v.

Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002) (citing Mellon Bank (East) PSFS Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) and Carteret Savings, 954 F.2d at 142 n.1).

The plaintiff's standard of proof varies depending upon the nature of the evidence presented to the Court for its consideration.  Wright & Miller, Federal Practice and Procedure: Civil 2d § 1351 at 248, n. 27 (3d Ed. 2002).  The Court may proceed either based upon affidavits and sworn documents or conduct an evidentiary hearing.  The type of proof is left to the Court's discretion.  See Gibbs v. Buck, 307 U.S. 66, 71-72 (1939).  Where no evidentiary hearing has taken place, the plaintiff must make out a prima facie case.  See LaRose v. Sponco Mfg. Inc., 712 F. Supp. 455, 458 n.2. (D.N.J. 1989).  If the Court conducts an evidentiary hearing, plaintiff is put to the higher burden of proving that personal jurisdiction is proper by a preponderance of the evidence.  See Id. (citing Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1285 (9th Cir. 1977)).

General personal jurisdiction exists when the evidence shows the defendant's contacts with the forum, whether or not related to the litigation, are "continuous and systematic."  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984).  Put differently, the plaintiff must show that "the defendant has purposefully directed its activities toward residents of the forum state or otherwise purposefully availed itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws."[4] IMO Indus., 155 F.3d at 259 (internal quotations and citations omitted).  If continuous and systematic

_____

[4] General jurisdiction, for example, requires that a foreign defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will qualify for general jurisdiction.  See Wright & Miller, Federal Practice and Procedure: Civil 3d § 1067.5 (3d Ed. 2002).

8

contacts with the forum state are shown, personal jurisdiction is proper even if the cause of action arises from nonforum contacts.  <u>Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.</u>, 746 F.2d 208, 211 (3d Cir. 1984); <u>see also</u> <u>Remick</u>, 238 F.3d at 255.

Specific personal jurisdiction exists when the relationship among the defendant, cause of action, and forum are such that a defendant should reasonably anticipate being haled into court there.  <u>Machulsky v. Hall</u>, 210 F. Supp. 2d 531, 539 (D.N.J. 2002) (citations omitted).  As the Honorable Michael Chagares, speaking for the Court of Appeals for the Third Circuit, stated:

> [d]etermining whether specific jurisdiction exists involves a three-part inquiry. First, the defendant must have purposefully directed his activities at the forum.[5] Second, the plaintiff's claim must arise out of or relate to at least one of those specific activities. Third, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise comports with fair play and substantial justice. Because this analysis depends on the relationship between the claims and contacts, we generally evaluate specific jurisdiction on a claim-by-claim basis.

<u>Marten v. Godwin</u>, 499 F.3d 290, 297 (3d Cir. 2007) (internal quotations marks and citations omitted).  To determine whether specific personal jurisdiction exists, the Court must examine the "quality and nature of the defendant's activity,"  <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958), which includes consideration of whether the actions that were directed at the forum and whether the particular claim arose from that activity.

Here, Plaintiff does not assert that Evatt and Crosstown independently have sufficient minimum contacts such that this Court may exercise personal jurisdiction over them.  Indeed in her September 28, 2012, Opinion, Judge Salas ruled that Evatt and Crosstown has insufficient contacts with the State of New Jersey to confer personal jurisdiction.  Opinion, D.E. 76, at 6-

---

[5] There is sufficient due process contact for specific personal jurisdiction if the defendant, for example, has purposefully directed its activities at residents of the forum.  <u>Henry Heide, Inc. v. WRH Products. Co.</u>, 766 F.2d 105, 108 (3d Cir. 1985).

9,11.  Instead, Plaintiff asserts that the law allows it to pierce Lightning's corporate veil, such

that Lightning's contacts with New Jersey can be imputed to Evatt and Crosstown.  A court may

confer personal jurisdiction over a parent by piercing the corporate veil of the subsidiary.  See

Eldon v. Brown, CV No. 08-5422, 2010 WL 415317 (D.N.J. Jan. 29, 2010).  However, to

"confer jurisdiction a subsidiary must have either directed the parent to take an action or cause an

effect in the forum state or the businesses must have disregarded their existence as separate

corporate entities." Id. * 2.  Therefore, the Court must first analyze whether Plaintiff can pierce

the corporate veil.

      i.        **Piercing the Corporate Veil**

              **a.  Choice of Law**

The New Jersey Limited Liability Company Act mandates an application of a foreign

state's veil-piercing law to a claim against a foreign L.L.C.  See  N.J.S.A 42:2C-57 ("The laws of

the state or other jurisdiction under which a foreign limited liability company is formed

governs…the liability of its members as members and managers as managers"); D.R. Horton

Inc.—New Jersey v. Dynastar Development, No. MER–L–1808–00, 2005 WL 1939778, *31

(N.J. Super. Ct., Law Div. 2005) (holding that the "weight of authority agrees that veil-piercing

analysis is governed by the law of the state of formation").

Though it would appear that N.J.S.A 42:2C-57 instructs the Court to apply Tennessee

law, New Jersey courts, have also articulated a second standard.  In D.R. Horton Inc.–New

Jersey v. Dynastar Development, LLC, the court discussed two possible methods of determining,

under New Jersey law, which state's law should govern veil-piercing. No. MER–L–1808–00,

2005 WL 1939778, at *20–21.   Specifically, a court applying New Jersey law could either: (1)

look to the target entity's state of incorporation; or (2) conduct a flexible "governmental interest

analysis," where the court applies the law of the state "that has the most significant connections with the parties and the transaction." Id. at *21 (quoting Boyson, Inc. v. Archer & Greiner, P.C., 308 N.J. Super. 287, 297 (App. Div. 1998)).  In Dynastar, the Court concluded that it need not choose between the two methods of analysis, because the result was the same either way: New Jersey law applied. Id.

Similarly, here the Court need not determine which analysis to utilize as, under either analysis, Tennessee law applies.  Both Crosstown and Lightning are incorporated under the laws of Tennessee.  Further, Tennessee clearly has the most significant connections with the parties and transactions as the gravamen of the activity at issue in this case occurred in Tennessee.  All of the alleged activities relating to whether the Court should pierce Lightning's corporate veil took place in Tennessee.  Therefore, the Court's veil-piercing analysis is governed by the law of Tennessee.

### ii.    Legal Standard

In general, it is a fundamental principle that corporations are entities distinct from their corporate officers and shareholders.  State Dept. of Envtl. Prot. v. Ventron Corp., 468 A.2d 150, 164 (1983).  As a general rule, members, owners, employees of other agents of a Tennessee limited liability company have no personal liability for the debts of obligations of the company. See Tenn. Code Ann. 48-217-101(a)(1). Under an equitable remedy known as "piercing the corporate veil," however, "the separate legal entity of a corporation may be disregarded upon a showing that it is a sham or a dummy or where necessary to accomplish justice."  Schlater v. Haynie, 833 S.W.2d 919, 925 (Tenn. App. 1991). Despite the inapplicability of the remedy's name, the "corporate veil" of a Tennessee limited liability company may also be pierced,

utilizing the same standards.  See Starnes Family Office, LLC v. McCullar, 765 F. Supp. 2d 1036, 1049 (W.D. Tenn. 2011).

Tennessee courts have instructed that "[c]onditions under which the corporate entity will be disregarded vary according to the circumstances present in the case." Muroll Gesellschaft M.B.H. v. Tenn. Tape, Inc., 908 S.W.2d 211, 213 (Tenn. App. 1995).  For example, "[d]iscarding the fiction of the corporate entity, or piercing the corporate veil, is appropriate when the corporation is liable for a debt but is without funds to pay the debt, and the lack of funds is due to some misconduct on the part of the officers and directors." VP Bldgs., Inc. v. Polygon Grp., No. M2001–00613–COA–R3–CV, 2002 WL 15634, *4 (Tenn. App. 2002). Similarly, the corporate veil will be pierced "where the corporation is created or used for an improper purpose, or where the corporate form has been abused, as when used to an end subversive of the corporation's policy." Schlater, 833 S.W.2d at 925. The remedy should "be applied with great caution and not precipitately, since there is a presumption of corporate regularity." Id.  "The party wishing to pierce the corporate veil has the burden of presenting facts demonstrating that it is entitled to this equitable relief." Oceanics Sch., Inc. v. Barbour, 112 S.W.3d 135, 140 (Tenn. App. 2003).  Factors to be considered in determining whether to disregard the corporate veil include:

> Not only whether the entity has been used to work a fraud or injustice in contravention of public policy, but also: (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of

another person or entity; and (11) the failure to maintain arms length relationships among related entities.

CAO Holdings, Inc. v. Trost, 333 S.W.3d 73, 89 n.13 (Tenn. 2010).  The piercing of a corporate veil is applied in extreme circumstances, and no single factor may form a basis for piercing the corporate veil.  Canter v. Ebersole, No. E200502388COAR3CV, 2006 WL 1627288 (Tenn. Ct. App. May 13, 2006).  No one factor is conclusive, Schlater, 833 S.W.2d at 925, and "it is not necessary that all factors weigh in favor of piercing the corporate veil.  It is necessary, however, that the equities substantially favor the party requesting the court to disregard the corporate status."  CAO Holdings, 333 S.W.3d at 89.

## 2) Analysis

### a.  Piercing the Corporate Veil as to Evatt

Plaintiff alleges that there is sufficient evidence to pierce the corporate veil as to Evatt, because while he was Lightning's president he did not observe corporate formalities. Pl.'s Br., D.E. 136, at 9.  Specifically, Plaintiff relies on a series of financial transactions from Lightning's corporate funds to Lightning's individual partners, including Evatt.[6]

---

[6] The transactions relied upon by Plaintiff are as follows:

    (1) At the time of its formation, Lightning obtained a $100,000 line of credit with Tennessee Commerce Bank for operating capital. This was done without a formal resolution.

    (2) Lightning obtained a second line of credit with Tennessee Commerce Bank for $500,000 without a formal resolution.

    (3) In 2007, Evatt received a transfer of $55,000 with no formal corporate resolution.

    (4) In 2008, Lightning, through Evatt, issued a loan of $160,000 of Lightning's corporate funds to Crosstown.

    (5) Evatt approved a loan of $35,000 to Mr. O'Riordan for purpose of moving his personal residence.

Pl.'s Br., D.E. 136, at 8-10, 21.

However, under Tennessee law, corporate formalities are less stringent for limited liability companies, such as Lightning.  See Tenn. Code Ann. §48-217-101(e); see also NVK Spinning Co., LTD v. Nichols, No. 12-2904, 2014 WL 28831, *4-6 (W.D. Tenn. 2014) ("Adherence to corporate formalities is not required for an LLC to maintain its limited-liability status under the [Tennessee] statute"). Therefore, because Lightning is a limited liability company, actions taken on behalf of the company without formal resolutions is not sufficient to pierce the corporate veil.

Plaintiff also alleges that Defendants siphoned Lightning's corporate funds for their own personal use.  Pl.'s Br., D.E. 136, at 14.  Plaintiff relies heavily on the fact that, in 2008, Evatt issued a loan of approximately $160,000 of Lightning's corporate funds to Crosstown.  Id. at 9. In this regard, Plaintiff alleges because Evatt entered into this activity without first passing a corporate resolution to approve this loan, Evatt and Lightning did not maintain the corporate formalities.  Id.  However, while Evatt acknowledges that such a loan was taken without first informing his partner, Mr. Smith, Evatt further testified that the full loan was paid back, with interest.  Deposition of Scott Evatt ("Evatt Dep"), attached as Ex. 2 to the Declaration of Paul Piantino, D.E. 136-3, 125:19-21.[7]

---

[7]    Plaintiff asserts that Defendants have not been able to produce any documents demonstrating their repayment of the $160,000 loan, "despite multiple requests for same." Pl.'s Br., D.E. 136, at 17 n. 4.  However, the only evidence of any such discovery request offered by Plaintiff is one informal Request for Production.  See Request for Production, attached as Ex. 13 to Certification of Geoffrey F. Sasso ("Sasso Cert."), D.E. 80-15.  Plaintiff never moved to compel such discovery, despite being specifically granted the ability to conduct jurisdictional discovery.  It is the Plaintiff's burden to prove that there is sufficient evidence to pierce Lightning's corporate veil.  The Court notes that while it would have been incumbent on Evatt to produce such evidence if compelled or ordered, however, it is not Defendants' burden to show that the Court lacks jurisdiction. Instead it is Plaintiff's burden to show the Court can exercise jurisdiction over the Defendants.  Therefore, the Court will not construe the lack of evidentiary support on either side against Defendants.

Therefore, the Court finds that Plaintiff's allegations that Lightning failed to observe corporate formalities, and alleged loans and/or disbursements of corporate funds to the members of Lightning, are not legally sufficient to pierce Lightning's corporate veil or impose alter ego liability upon Evatt or Crosstown.

Plaintiff further asserts that the Lightning was not sufficiently capitalized, which therefore, further justifies piercing the corporate veil.  Pl.'s Br., D.E. 136, at 22.  As evidence of undercapitalization, Plaintiff cites the fact that none of the officers of Lightning invested any capital and the company's main source of capital was two loans taken out by the business.  Id. However, Plaintiff fails to cite any caselaw that supports the proposition that sufficient capitalization requires investment by officers of the corporation.  Lightning was, at the time of its formation, capitalized with a $100,000 line of credit with Tennessee Commerce Bank.  Lightning later obtained a $500,000 line of credit with Tennessee Commerce Bank.   The fact that Lightning was ultimately unable to fulfill its obligations to Plaintiff is not, of itself, sufficient evidence that Lightning was not sufficiently capitalized. See N.L.R.B. v. Fullerton Transfer & Storage Ltd., Inc., 910 F.2d 331, 339 (6th Cir. 1990) (holding that a corporation was not undercapitalized even though currently unable to meet its obligations because the records showed that, prior to the dispute at hand, the corporation was able to meet its bills and pay its salaries).

### b.  Alter Ego as to Crosstown

For the Court to have personal jurisdiction over Crosstown, the Court first must find that Crosstown is the alter ego of Lightning.  When piercing the corporate veil, "a court may disregard the corporate entity in order to impose liability against a related entity, such as a parent corporation or a controlling shareholder, where the two entities are in fact identical or

15

indistinguishable and where necessary to accomplish justice." <u>Pamperin v. Streamline Mfg.,</u>

<u>Inc.</u>, 276 S.W.3d 428, 437 (Tenn. Ct. App. 2008).  When a subsidiary corporation is used as a

mere instrumentality of a parent corporation, the Supreme Court of Tennessee has held that the

corporate veil of the subsidiary may be pierced to reach the parent if three elements are present:

> (1) The parent corporation, at the time of the transaction complained of, exercises complete dominion over its subsidiary, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will or existence of its own.
> (2) Such control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of third parties' rights.
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

<u>Continental Bankers Life Ins. Co. of the South v. Bank of Alamo</u>, 578 S.W.2d 625, 632

(Tenn.1979).

Plaintiff relies heavily on <u>Stochastic Decisions, Inc. v. DiDomenico</u>, 236 N.J.

Super. 388 (App. Div. 1989), for the proposition that when there is serious ambiguity

about the distinction between two companies and there is evidence of control by common

representatives, alter ego liability should be imposed. <u>See</u> Pl.'s Br., D.E. 136, at 27.

Plaintiff's reliance on <u>Stochastic</u>, however, is flawed for two reasons. First, as the Court

has previously discussed, Tennessee law applies.  Further, even if New Jersey law were

to apply, <u>Stochastic</u> is easily distinguishable as the entities at issue were not limited

liability companies.  As the Court has previously stated, under Tennessee law, corporate

formalities are less stringent for limited liability companies. <u>See</u> Tenn. Code Ann. §48-

217-101(e); <u>see also</u> <u>NVK Spinning Co., LTD v. Nichols</u>, 2014 WL 28831, *4-6 (W.D.

Tenn. 2014).

Here, Plaintiff asserts that discovery has shown that Crosstown and Lightning operated

out of the same office, shared staff, computer servers, furniture, and accounting software. Pl.'s

Br., D.E. 136, at 29.  Plaintiff relies primarily on the testimony of O'Riordan who certified that:

> Despite Mr. Evatt's testimony, during the period of 2006 through 2010, Lightning
> and Crosstown Courier, Inc. shared accounting servers, overnight customer
> service representatives, office furniture, warehouse space, and essentially
> everything except certain employees and computers.

Declaration of John Gregory O'Riordan ("O'Riordan Dec."), attached as Ex. 5 to Pianto

Dec., D.E. 136-6, ¶ 3.[8]  Such evidence, however, is insufficient to demonstrate that

Lightning was a sham or dummy corporation. See In re Steffner, 479 B.R. 746 (Bankr.

E.D. Tenn. 2012).  As "[i]t is not unusual or inappropriate for closely-held businesses to

utilize the same professionals for convenience." Id. at 757.

In In re Steffner, Hulsing, the judgment creditor of Sleep Quest, moved for

summary judgment against Sleep Quest's related entity, SRS, arguing that the entities

shared the same office building, bank, attorneys, and accountant.  Id. at 756. Hulsing also

cited a transfer of funds from Sleep Quest to SRS at the time of Hulsing's garnishment

and the alleged interference with Hulsing's garnishment of BCBS funds as evidence of a

"diversion of corporate assets ... to the detriment of creditors." Id.  The Court found that

as a matter of law, these facts were insufficient to meet the legal standard for disregarding

Sleep Quest's corporate veil.  Id.  Similarly, here, the Court finds that the shared facilities

---

[8] It should be noted that O'Riordan previously stated that Plaintiff's case against Evatt
"has no meritorious claim."  See Answer to Plaintiff's request for Default, attached as Ex. A to
the Declaration of Eli J. Rogers ("Rogers Dec."), D.E. 137-2.

and staff between Lightning and Crosstown is insufficient to pierce the corporate veil of Lightning.[9]

  In finding insufficient grounds to impose alter ego liability, the Court in <u>In re Steffner</u> also relied on the fact that the two entities were formed at different times and for different purposes. <u>Id.</u> at 757.   Here, too Lightning and Crosstown were formed at separate times, and for separate purposes.  Lightning provided logistical support to commercial shippers by arranging for last mile delivery services, while Crosstown is a traditional courier service. <u>See</u> Affidavit of Thomas Scott Evatt, attached as Ex. 5 to Rogers Dec., D.E. 130-4, ¶ 4, 23.   The two companies clearly performed independent and distinct businesses, and, while there may have been some overlap in use of corporate resources, this is insufficient to pierce the corporate veil.  Therefore, Plaintiff has failed to meet its burden of showing that Lightning's corporate veil should be pierced, and that Crosstown is Lightning's alter ego.

  **IV.**  **Conclusion**

  For the reasons set forth above, the Court hereby recommends that the Court **grant** Defendants Evatt and Crosstown's motion to Dismiss for lack of personal jurisdiction.


          **s/ Michael A. Hammer**
Date:             United States Magistrate Judge

---

[9] The Court notes that Evatt denies the allegations that Crosstown and Lightning shared staff.  In his deposition testimony, Evatt was questioned as to whether several employees worked for both Lightning and Crosstown. <u>See</u> Deposition of Scott Evatt, attached as Ex. 2 to Piantino Dec., D.E. 136-3. Evatt testified that, of all the employees of Lightning, only two were also employees of Crosstown. <u>Id.</u> at 162:16-165:20.   Further, he testified that one of said employees left her employ at Crosstown before starting with Lightning.  <u>Id.</u> at 165:14-20.