NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                              :
**MARK IV TRANSPORTATION &**                  :
**LOGISTICS, INC.,**                          :        **Civil Action No. 09-6480 (ES)**
                                              :
                        **Plaintiff,**        :
                                              :        **MEMORANDUM**
                        **v.**                :        **OPINION & ORDER**
                                              :
**LIGHTNING LOGISTICS, LLC, et al.,**         :
                                              :
                        **Defendants.**       :
_____:

SALAS, DISTRICT JUDGE

## I.    INTRODUCTION

Pending before the Court is a motion to dismiss Plaintiff Mark IV Transportation & Logistics, Inc.'s ("Plaintiff" or "Mark IV") Second Amended Complaint.  (D.E. No. 130). Defendants Crosstown Courier, Inc. ("Crosstown") and Scott Evatt ("Evatt") (collectively "Defendants") filed their motion to dismiss the Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) or, in the alternative, for summary judgment pursuant to Rule 56.  (*Id.*).

This Court referred Defendants' motion to the Honorable Michael A. Hammer, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B).  On August 29, 2014, Magistrate Judge Hammer issued a Report and Recommendation (the "R & R") that the undersigned grant Defendants' motion to dismiss for lack of personal jurisdiction, and deny as moot the motions to dismiss under Rule 12(b)(6) and for summary judgment.  (D.E. No. 138).  Pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 72.1(c)(2), the parties had fourteen days to file and serve any

objections to the R & R.  Plaintiff requested and received a two-week extension, (D.E. Nos. 139, 140), and on September 26, 2014, filed Objections to the R & R, (D.E. No. 142, Plaintiff's Objections ("Obj.")).

After reviewing the record *de novo*, for the reasons set forth in the R & R and for the additional reasons set forth below, the Court adopts Magistrate Judge Hammer's R & R and GRANTS Defendants' motion to dismiss.

## II.    LEGAL STANDARD

"When a litigant files an objection to a Report and Recommendation, the district court must make a *de novo* determination of those portions to which the litigant objects." *Leonard Parness Trucking Corp. v. Omnipoint Commc'ns, Inc.*, No. 13-4148, 2013 WL 6002900, at *2 (D.N.J. Nov. 12, 2013) (citing 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(b), and L. Civ. R. 72.1(c)(2)).  "'De novo review' means the district court must consider the matter referred to a magistrate judge anew, as if it had not been heard before and as if no decision previously had been rendered."  12 Fed. Prac. & Proc. Civ. § 3070.2 (2d ed.).  Upon conducting de novo review, the district judge may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

## III.   FACTUAL AND PROCEDURAL BACKGROUND

The Court provides the background of this action in summary fashion because the relevant factual and procedural background was set forth in this Court's September 28, 2012 Opinion, (D.E. No. 76), and in Judge Hammer's R & R, (D.E. No. 138).  Briefly, Plaintiff is a New Jersey corporation with its principal place of business in Kearny, New Jersey.  (D.E. No. 121, Second Amended Complaint, ("2d Am. Compl.") ¶ 2).  Lightning Logistics, LLC ("Lightning") was

formed as a Tennessee limited liability company on March 2, 2006, and its principal place of business was in Nashville, Tennessee. (*Id.* ¶¶ 3, 11). Lightning was owned and operated by Evatt and a colleague, Gregory O'Riordan. (*Id.* ¶ 12). Evatt is a resident of Tennessee and he also owns and operates Crosstown, a Tennessee corporation with its principal office located in Nashville, Tennessee. (*Id.* ¶¶ 5, 7, 17).

On December 23, 2009, Plaintiff commenced this action against Lightning alleging claims for (1) collection of the amount due under a book account and (2) breach of contract, seeking approximately $100,758.67 for delivery services rendered. (D.E. No. 1, Complaint). Plaintiff added Crosstown and Evatt as Defendants via an Amended Complaint filed on February 2, 2011. (D.E. No. 10). A little over one year later, Crosstown and Evatt filed a motion to dismiss for lack of personal jurisdiction, (D.E. No. 55), which was ultimately granted by this Court on September 27, 2012, (D.E. No. 77). However, on October 22, 2013, after reviewing Plaintiff's Motion for Reconsideration, (D.E. No. 80), this Court ordered that the Amended Complaint be reinstated as to Crosstown and Evatt and allowed Plaintiff to depose Evatt in his individual capacity and as a representative of Crosstown, (D.E. No. 120). Plaintiff filed a Second Amended Complaint on October 29, 2013, in which it specifically sought to pierce Lightning's corporate veil and impose alter ego liability on Crosstown and Evatt. (2d Am. Compl. ¶¶ 63–89). On February 20, 2014, Crosstown and Evatt moved to dismiss the Second Amended Complaint. (D.E. No. 130). As noted above, on August 29, 2014, Judge Hammer issued the R & R that the undersigned grant Defendants' motion to dismiss for lack of personal jurisdiction, (D.E. No. 138), to which Plaintiff filed their Objection on September 26, 2014, (D.E. No. 142).

## IV.    DISCUSSION

In the R & R, Judge Hammer notes that Plaintiff is attempting to assert personal jurisdiction over Defendants by piercing the corporate veil of Lightning.  (R & R at 10).  Judge Hammer determines that Tennessee law applies to the corporate veil-piercing analysis, (*id.* at 11), and concludes that the evidence is not legally sufficient to pierce the corporate veil of Lightning to impose alter ego liability upon Defendants, (*id.* at 13–18).

Plaintiff objects to the R & R on six different grounds.  First, Plaintiff objects to the R & R's statement that "Plaintiff does not explain how piercing the corporate veil leads to personal jurisdiction in this case."  (Obj. at 2–3).  Second, Plaintiff objects to the R & R's application of Tennessee law to the veil-piercing analysis.  (*Id.* at 3–4).  Third, Plaintiff objects to the extent the R & R applied the wrong legal standard to the claim against Evatt.  (*Id.* at 4).  Fourth, Plaintiff objects on the grounds that the R & R failed to properly analyze certain key facts supporting their veil-piercing argument.  (*Id.* at 4–8).  Fifth, Plaintiff objects to the R & R's credibility determinations with respect to a $160,000 loan from Lightning to Crosstown that was issued by Evatt in 2008.  (*Id.* at 9–10).  Plaintiff's sixth and final objection asserts that Judge Hammer "misapplied the law and failed to mention or consider multiple facts relevant to the claim against Crosstown."  (*Id.* at 10).

This Court reviews each Objection individually, *see Leonard Parness*, 2013 WL 6002900, at *2, and ultimately adopts the R & R in accordance with Fed. R. Civ. P. 72(b)(3).

### A.  First Objection

Plaintiff first objects to the statement in the R & R that "Plaintiff does not explain how piercing the corporate veil leads to personal jurisdiction in this case."  (R & R at 5, n.3).  The Court

agrees that the R & R mischaracterizes Plaintiff's Opposition Brief ("Pl. Opp. Br.") and notes that Plaintiff adequately explains their theory of imputing Lightning's contacts to Crosstown and Evatt.

Nevertheless, the Court finds the R & R's mischaracterization harmless.  The R & R re-states Plaintiff's theory for establishing personal jurisdiction, and then appropriately analyzes the necessary elements.

### B.  Second Objection

Second, Plaintiff objects to the R & R's application of Tennessee law to the veil-piercing analysis.  (R & R at 10–11).  Plaintiff objects to this conclusion and believes that the governmental interest analysis instead leads to application of New Jersey law.  (*Id.*)

The New Jersey Limited Liability Company Act ("NJLLCA") calls for application of Tennessee law.  The NJLLCA states that "[t]he law of the state or other jurisdiction under which a foreign limited liability company is formed governs . . . the liability of a member as member and a manager as manager for the debts, obligations, or other liabilities of the company."  N.J.S.A. 42:2C-57(a)(2).    However, New Jersey courts could also "conduct a flexible 'governmental interest analysis,' where the court applies the law of the state 'that has the most significant connections with the parties and the transaction."  *D.R. Horton Inc. - New Jersey v. Dynastar Dev., L.L.C.*, MER-L-1808-00, 2005 WL 1939778 (N.J. Super. Ct. Law Div. Aug. 10, 2005).  Like Judge Hammer, this Court determines that Tennessee law applies under both the New Jersey statute and the governmental interest analysis.

The main issue before the Court is whether it should pierce the corporate veil of Lightning, a Tennessee LLC.  N.J.S.A. 42:2C-57(a)(2) calls for the application of Tennessee law, since Lightning was incorporated in Tennessee and had its principal place of business there.  (*Id.* ¶¶ 3,

11).  The governmental interest analysis set forth in *Horton* also leads to application of Tennessee law.  "The governmental-interest analysis seeks to determine the interest that each state has in resolving the specific issue in dispute."  *Las Vegas Sands Corp. v. Ace Gaming, LLC*, 713 F. Supp. 2d 427, 443 (D.N.J. 2010) (internal citation omitted).  Ultimately, "the court applies the law of the state that has the *most significant* connections with the parties and the transaction."  *Id.* (quoting *D.R. Horton Inc.,* 2005 WL 1939778, at *21 (internal quotation omitted)) (emphasis added).  New Jersey, as the state where Plaintiff is incorporated and has its primary place of business, undoubtedly has an interest "in seeing its residents compensated for wrongdoing done by a foreign company whilst it purposefully availed itself of doing business in New Jersey."  (Obj. at 4); s*ee also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.") (citing *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223 (1957)).  However, Tennessee—as the state where Lightning and Crosstown are incorporated and have their principal place of business, and where Evatt resides—also has an interest in seeing that its residents and corporations are not inappropriately subject to lawsuits in other parts of the country where jurisdiction is lacking.  *See generally Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773–74 (1984) (noting that a defendant cannot be "haled" into court for "attenuated . . . random, isolated, or fortuitous" contacts with the forum state).

Under the governmental interest analysis, Tennessee has the more significant interest since all of the activities which could lead to piercing Lightning's corporate veil actually took place in Tennessee.  Therefore, the Court agrees with the R & R and finds that because Lightning is incorporated in Tennessee, and because Tennessee has the "most significant connection with the

6

parties and the transaction," that Tennessee law applies to the veil-piercing analysis.

### C.  Third Objection

Third, Plaintiff objects to the extent the R & R applies the wrong legal standard to the claim against Evatt.  (Obj. at 4).  Plaintiff notes that the R & R cites *Eldon v. Brown*, No. 08-5422, 2010 WL 415317 (D.N.J. Jan. 29, 2010) for the proposition that a Court may confer personal jurisdiction over a parent corporation for certain actions taken by a subsidiary.  (R & R at 5, n.3).  In the Objection, Plaintiff makes clear that it never alleges that Evatt, an individual, is or was a parent company of Lightning and therefore that *Eldon* is inapplicable to Evatt.  (Obj. at 4).

The Court does not find that the R & R applies *Eldon* to Evatt.  Rather, it appears that *Eldon* is cited in the R & R merely to explain generally the theory of how piercing the veil of Lightning could lead to personal jurisdiction over Crosstown and Evatt.  Significantly, *Eldon* is cited prior to the choice-of-law and substantive veil-piercing analyses.  Moreover, *Eldon* is not cited in the section of the R & R which analyzes Evatt.  Thus, there is no indication that the citation to *Eldon* in and of itself led to a misapplication of the law in any way.

### D.  Fourth Objection

Fourth, Plaintiff objects on the grounds that the R & R fails to properly analyze certain key facts supporting their veil-piercing argument.  (Obj. at 4–8).  Plaintiff highlights twelve specific examples not mentioned in the R & R and contends that the R & R focuses too heavily on certain financial transactions to the detriment of the overall analysis.[1]  (*Id.*)  After reviewing the record *de*

---

[1] Specifically, Plaintiff points to the following evidence: (1) "Evidence that Evatt used his position as President of Lightning to block another officer, O'Riordan, from accessing Lightning's accounts after O'Riordan complained about the unauthorized loan taken by Evatt;" (2) "The fact that Mr. O'Riordan called the police as [sic] believed Evatt's unauthorized loan was a theft of corporate funds;" (3) "Crosstown's ability to apply for and receive extensions on Lightning's own bank loans;" (4) "Crosstown's ability to use Lightning's financial status to request increases in Crosstown's own line of credit;" (5) "The lack of a written lease for the use of Crosstown's office space;" (6)

*novo*, including the specific examples pointed out by Plaintiff in their Objection, this Court finds

that the evidence is insufficient to warrant piercing Lightning's corporate veil.  In short, the

evidence adduced by Plaintiff does not convince the Court that Lightning was "a sham or a dummy,

that the corporate form was abused or used for an improper purpose, or that [Lightning] was unable

to pay its obligations due to some misconduct on the part of [Evatt or Crosstown] that justifies

piercing the veil."  *In re Steffner*, 479 B.R. 746, 756 (Bankr. E.D. Tenn. 2012).

      1.  <u>Standard under Tennessee Law</u>

As noted above, this Court finds that Tennessee law applies to the veil-piercing analysis.

The general rule under Tennessee law is that members, owners, employees or other agents of a

Tennessee limited liability company have no personal liability for the debts or obligations of the

company.  *See* Tenn. Code Ann. § 48–217–101(a)(1); Tenn. Code Ann. § 48–249–114(a)(1)(B).

However, under Tennessee law, a court may disregard an entity's form—including an LLC—to

hold "the true owners of the entity . . . liable when the corporation is liable for a debt but is without

funds due to some misconduct on the part of the officers and directors."  *Starnes Family Office,*

*LLC v. McCullar*, 765 F. Supp. 2d 1036, 1049 (W.D. Tenn. 2011) (internal citations omitted).

Under Tennessee law, "[t]o pierce the corporate veil, a court must be convinced that the separate

corporate entity 'is a sham or a dummy' or that disregarding the separate corporate entity is

'necessary to accomplish justice.'"  *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 88 (Tenn. 2010)

---

"Lightning's decision to pay officers and loan them corporate funds despite an inability to pay creditors;" (7) "The use of corporate funds to pay an officer's commuting expenses;" (8) "Evatt taking a salary despite doing little to earn these funds according to his fellow officer;" (9) "Lightning assigning its interest in a personal loan to its officer to its bank to avoid suit by the bank on defaulted loans which were personally guaranteed by Lightning's officers;" (10) "Evatt's receipt of a back salary at the time of his separation from Lightning despite Lightning being significantly in debt;" (11) "Lightning's decision to pay all invoices of Crosstown despite not paying multiple other creditors; and" (12) "Evatt, the joint head of Crosstown and Lightning, forced Lightning's officers to work for Crosstown."  (Obj. at 5–6).

(quoting *Oceanics Sch., Inc. v. Barbour*, 112 S.W.3d 135, 140 (Tenn. Ct. App. 2003)).  But, "Tennessee law strongly disfavors piercing the corporate veil," *NVK Spinning Co., LTD. v. Nichols*, 12-2904, 2014 WL 28831 (W.D. Tenn. Jan. 2, 2014), and it should be pierced "only in extreme circumstances . . . ." *Edmunds v. Delta Partners, L.L.C., et al.*, 403 S. W.3d 812, 829 (Tenn. Ct. App. 2012) (internal citation omitted).

"Conditions under which the corporate entity will be disregarded vary according to the circumstances present in the case." *Muroll Gesellschaft M.B.H. v. Tenn. Tape, Inc.*, 908 S.W.2d 211, 213 (Tenn. App. 1995).  "Whether the veil should be pierced is an equitable determination that must be made after considering the 'entire spectrum of relevant facts.'" *Grand Rapids Associates Ltd. P'ship v. Coop Properties, LLC*, 495 F. App'x 598, 601 (6th Cir. 2012) (internal citation omitted).  "There is no single rule delineating when a corporate entity should be disregarded, and the facts are to be assessed in light of a corporation's economic justification to determine if the corporate form has been abused." *Rymal v. Baergen*, 262 Mich.App. 274, 686 N.W.2d 241, 252 (2004).

> Factors to be considered in determining whether to disregard the corporate veil include not only whether the entity has been used to work a fraud or injustice in contravention of public policy, but also: (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities.

*Trost*, 333 S.W.3d at 89 n.13 (quoting *Fed. Deposit. Ins. Corp. v. Allen*, 584 F.Supp. 386, 397

(E.D. Tenn. 1984)).  "[I]t is not necessary that all factors weigh in favor of piercing the corporate veil.  It is necessary, however, that the equities substantially favor the party requesting the court to disregard the corporate status."  *Trost*, 333 S.W.3d at 89 (quoting *Oceanics Sch., Inc. v. Barbour*, 112 S.W.3d at 140–41).

    2.  <u>Analysis</u>

    Plaintiff's Opposition Brief places the evidence showing why Lightning's corporate veil should be pierced into three broad categories: (i) failure to adhere to corporate formalities; (ii) misuse or siphoning of corporate funds; and (iii) undercapitalization.  (Pl. Opp. Br. at i).  The Court finds substantial overlap between these three categories and in particular notes that failure to adhere to corporate formalities appears to be a "but for" cause of the alleged misuse of corporate funds, which in turn is a "but for" cause of the undercapitalization.  In other words, Lightning was unable to pay Mark IV because it was allegedly undercapitalized; it was undercapitalized because of the alleged misuse of funds; and the misuse of funds occurred largely because Lightning failed to adhere to corporate formalities.

    With respect to failure to adhere to corporate formalities, Plaintiff contends that "the law does not stand for the proposition that corporate formalities are not required [for an LLC] at all." (Pl. Opp. Br. at 13).  While this may be true, Plaintiff cites no specific Tennessee law in support of this stance.  On the other hand, Tennessee law seems clear that failure to adhere to formalities is insufficient for piercing an entity's veil.  *See* Tenn. Code Ann. § 48-217-101(e) ("The failure of an LLC to observe the usual company formalities or requirements relating to the exercise of its LLC powers or management of its business is not a ground for imposing personal liability on the members, governors, managers, employees or other agents of the LLC."); *NVK Spinning Co., LTD.*

*v. Nichols*, No. 12-2904, 2014 WL 28831 (W.D. Tenn. Jan. 2, 2014) ("Adherence to corporate formalities is not required for an LLC to maintain its limited-liability status under the statute."). Additionally, the official comment to Section 304(b) of the Revised Uniform Limited Liability Company Act—upon which the Tennessee statute is based—notes that "[i]n the corporate realm, 'disregard of corporate formalities' is a key factor in the piercing analysis. In the realm of LLCs, that factor is inappropriate, because informality of organization and operation is both common and desired."

In light of this—and in the absence of law to the contrary—the Court finds it highly significant that Lightning was an LLC that chose to operate informally.[2] To be clear, the Court is not saying that failure to adhere to corporate formalities is never relevant in determining whether or not to pierce the veil of a Tennessee LLC. However, viewing the facts on the record in this particular dispute in light of the law governing Tennessee LLCs, the equities undoubtedly tip away from piercing the veil. Evatt had broad authority as President of Lightning to run the business. (*See* Reply Decl., Ex. C. at ¶¶ 2, 19 (showing how Evatt had broad discretion over the types of transactions engaged in by Lightning)). Furthermore, Lightning was formed approximately twelve years after Crosstown and the record suggests that both companies had sufficient "economic justification," *Rymal*, 262 Mich.App. at 294, in that the companies had independent roles within the shipping services industry. (*See infra* at 15).

Within this context, certain evidence adduced by Plaintiff speaks just as much to the pitfalls of choosing to organize and operate a co-owned LLC informally as it does to an outright abuse of the corporate form which would warrant piercing the entity's veil in the interests of justice. For

---

[2] *See, e.g.*, D.E. No. 130-8, Ex. 20, Deposition of Scott Evatt ("Evatt Dep.") at 49:1–50:21, 128:10–17. This Court construes Evatt's inability to recall corporate resolutions or bylaws as evidence of informal operation.

example, the fact that Evatt blocked O'Riordan from accessing Lightning's accounts and that O'Riordan called the police after learning of the six-figure loan can be construed as evidence of a disagreement between co-owners of an informally run business as much as it can be construed as evidence of Lightning as a "sham or dummy."

Additionally, the Court is satisfied that Lightning possessed sufficient capital. Plaintiff stresses that the undercapitalization analysis should have focused on the misuse of funds, instead of focusing on capitalization at formation.[3]   Again, however, the Court finds Lightning's LLC structure significant.   Plaintiff's objections make clear that it believes that Lightning was undercapitalized because of the alleged misuse of funds, which arose out of Lightning's failure to adhere to corporate formalities.  (Obj. at 6–8).  The record convinces the Court that Lightning was not a "sham or dummy," and so the Court declines to find informal, yet perhaps misguided, decisions of the LLC which lead to inability to pay creditors sufficient to pierce the veil.  *NVK Spinning Co., LTD. v. Nichols*, No. 12-2904, 2014 WL 28831 (W.D. Tenn. Jan. 2, 2014) ("Adherence to corporate formalities is not required for an LLC to maintain its limited-liability status . . . ."); *see also Greene v. Hill Home Development Inc.*, 1993 WL 17115 (Tenn. Ct. App. 1993) ("Failure of a business venture and resulting loss of capital does not constitute gross undercapitalization . . . .").

Plaintiff also claims that the 2009 Loan Request form filled out by Crosstown was not sufficiently analyzed in the R & R.[4]  Plaintiff in particular emphasizes the following sentence from

---

[3] *E.g.*, "Lightning's decision to pay officers and loan them corporate funds despite an inability to pay creditors;" "The use of corporate funds to pay an officer's commuting expenses;" "Evatt taking a salary despite doing little to earn these funds according to his fellow officer;" "Evatt's receipt of a back salary at the time of his separation from Lightning despite Lightning being significantly in debt;" "Lightning's decision to pay all invoices of Crosstown despite not paying multiple other creditors."  (Obj. at 5–6).

[4] *E.g.*, "Crosstown's ability to apply for and receive extensions on Lightning's own bank loans" and "Crosstown's ability to use Lightning's financial status to request increases in Crosstown's own line of credit."  (Obj. at 5).

the loan request: "In January 2010, Lightning Logistics will be merged into Crosstown Couriers, Inc. . . ." (Pl. Opp. Br. at 31). However, in spite of the fact that Evatt was an officer of both Lightning and Crosstown, this Court does not find that contemplation of merger shows that Lightning was a "sham or dummy."

In short, it appears to this Court that the evidence adduced by Plaintiff to show why piercing the veil is warranted boils down to discretionary acts of an informally run LLC which resulted in inability to pay a creditor. When viewing the entire spectrum of facts, the Court cannot say that Lightning was a "sham or dummy," or that piercing Lightning's veil is "necessary to accomplish justice." *See Trost*, 333 S.W.3d at 88, 89.

### E.  Fifth Objection

Plaintiff also objects to the making of credibility determinations in the R & R. Specifically, Plaintiff objects to how the R & R "took Evatt's word that his unauthorized six figure loan was repaid to Lightning." (Obj. at 9 (citing R & R at 14)). Plaintiff contends that "the conclusion which should have been reached was that Evatt's unauthorized six figure loan was never repaid." (Obj. at 10).

First, this Court notes that Judge Hammer does not simply "take Evatt's word" that the loan was repaid. Instead, Judge Hammer states that Evatt testified that the loan had been repaid, that there is no evidence on point one way or the other, and that he "will not construe the lack of evidentiary support on either side against Defendants." (R & R at 14).

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants. However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima

13

facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (internal citations omitted).

Even if under *Miller Yacht Sales* this Court draws the factual dispute over loan repayment in favor of Plaintiff and concludes that the loan was not repaid, the Court would still not find this sufficient to pierce Lightning's veil. Although the line of credit from which the loan was drawn was "earmarked" to cover "gaps" in paying vendors such as Plaintiff, Plaintiff has not cited, and this Court is not aware, of any independent requirement under Tennessee law which dictates that the Court characterize such a unilateral withdrawal as "misconduct." There is nothing in the record which suggests that the line of credit could *only* be used for paying vendors, or that Plaintiff had a priority for receiving payment over Lightning's ability to utilize the line of credit for alternate purposes. As President of an informally run LLC, Evatt had broad discretion over which strategies to pursue.

**F. Sixth Objection**

Plaintiff's sixth and final objection asserts that Judge Hammer "misapplied the law and failed to mention or consider multiple facts relevant to the claim against Crosstown." (Obj. at 10). The R & R concludes that "Plaintiff has failed to meet its burden of showing that Lightning's corporate veil should be pierced, and that Crosstown is Lightning's alter ego." (R & R at 18).

> When piercing the corporate veil, a court may disregard the corporate entity in order to impose liability against a related entity, such as a parent corporation or a controlling shareholder, where the two entities are in fact identical or indistinguishable and where necessary to accomplish justice. When a subsidiary corporation is used as a mere instrumentality of a parent corporation, our Supreme Court has held that the corporate veil of the subsidiary may be pierced to reach the parent if three elements are present:
>
> (1) The parent corporation, at the time of the transaction complained of,

exercises complete dominion over its subsidiary, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will or existence of its own.

(2) Such control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of third parties' rights.

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Pamperin v. Streamline Mfg., Inc.*, 276 S.W.3d 428, 437–38 (Tenn. Ct. App. 2008) (internal citations omitted).

As set forth in the Declaration of Eli J. Rogers (and accompanying exhibits), (D.E. No. 130-2 ("Reply Decl.")), Crosstown was formed in or about 1995—twelve years prior to Lightning's formation—and still continues to operate.  (Reply Decl., Ex. 5 ¶ 25).   Unlike Lightning, Crosstown does not provide "logistics services" for shipping companies, but rather, is a traditional courier service, which performs so-called "last mile" deliveries in and around Tennessee.  (*Id.* at ¶¶ 23–24).  Furthermore, according to the deposition of Evatt, (*see* Reply Decl., Ex. 20), Lightning executed a lease agreement to sublease office space from Crosstown in 2006 and thus became a subtenant of Crosstown, (*id.* at 54:8–11); Lightning had its own space and setup and did not share secretarial support, computer support, or supplies, (*id.* at 55:14–15); and Lightning maintained its own separate customer service and dispatch personnel, (*id.* at 56:1).  Thus, despite the fact that a written memorialization of the lease was not produced, and that certain employees worked for both companies, the Court is satisfied that Crosstown is a separate and pre-existing entity in a different sector of the shipping industry and that Lightning is not "identical or indistinguishable" to Crosstown.

Like the R & R, this Court finds *In re Steffner*, 479 B.R. 746 (Bankr. E.D. Tenn. 2012) instructive.  There, a bankruptcy court declined to pierce the corporate veil despite the fact that the two companies at issue "operated out of the same building, albeit in different suites, and used the same bank, attorneys, and accounts." *Id.* at 757.    The court also noted that the two entities were "formed at different times for different purposes" and that it was "not unusual or inappropriate for closely-held businesses to utilize the same professionals for convenience." *Id.*    This Court declines to impose alter ego liability on Crosstown for similar reasons.

The Court has reviewed this matter *de novo*, and for the reasons stated above and in the R & R,

**IT IS** on this 12th day of December 2014,

**ORDERED** that this Court ADOPTS Magistrate Judge Hammer's Report and Recommendation, (D.E. No. 138), as the Opinion of this Court; and it is further

**ORDERED** that Plaintiff's motion to dismiss for lack of personal jurisdiction, (D.E. No. 130), is GRANTED; and it is further

**ORDERED** that the Clerk of Court shall mark this case CLOSED.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**

16